IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Ahmahd Kadeem Curry, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22cv70 (LMB/IDD) |
| | ) | |
| Deputy Dich, et al., | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Before the Court are dispositive motions from defendants Amanda Acree ("Acree") and Deputy Ellis Storrs ("Deputy Storrs") in this civil rights action brought by state prisoner Ahmahd Curry ("plaintiff" or "Curry"). In his Amended Complaint, plaintiff alleges that on December 5, 2020, while housed in the Henrico County Regional Jail, fellow inmate Tremont Hancock ("Hancock") attacked plaintiff, injuring his right eye. Plaintiff alleges that Deputy Storrs, along with defendant Deputy Cody Dich,[1] failed to protect him from harm and that defendant Acree failed to provide him with an optometrist to address his eye injury. For that injury, which he alleges caused him to need prescription eyeglasses, although plaintiff would rather wear contact lenses, [Dkt. No. 21] at 16, he seeks a total of $733,500.00, plus taking the rank of defendants Major G.T. Collins and Lt. Jenkins.[2] Id. at 19.

---

[1] Deputy Dich has filed an Answer to the Amended Complaint and has not joined his co-defendants' motions. [Dkt. No. 76].

[2] In his Amended Complaint, which is the operative complaint, plaintiff also attempted to raise claims against Lt. Jenkins, Maj. G.T. Collins, and the CEO of the company contracted to provide medical services at Henrico County Jail. See [Dkt. No. 21] at 13-15. The Court dismissed the claims against these defendants in an Order dated August 19, 2022. [Dkt. No. 20].

I. Acree's Motion to Dismiss

On October 19, 2022, Acree filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, which contained a Roseboro[3] notice informing plaintiff of his right to respond, and the proper manner in which to do so, and warning that failure to file a timely response could result in dismissal of his Complaint. Id. at 4. On December 29, 2022, plaintiff requested additional time to respond to Acree's Motion, stating that he "didn't receive [the Motion] until 12/15/22." [Dkt. No. 62]. The Court granted plaintiff's request on February 9, 2023, instructing him to file any response to Acree's Motion within thirty days. [Dkt. No. 65]. Since that time, plaintiff has neither requested additional time to respond nor filed any opposition to the Motion.[4]

Because plaintiff has failed to oppose Acree's Motion but has actively opposed the motion filed by another defendant, the Court deems that he has abandoned his claim against Acree. Cf. Blair v. Sterling, No. 5:20-cv-02548-JMC, 2021 WL 1884746, at *2 (D.S.C. May 11, 2021) ("After Blair failed to file a response to Governor McMaster's Motion to Dismiss, the court entered an Order on February 4, 2021, observing that Blair does not oppose the Motion [to Dismiss] and wishes to abandon this action against the Defendant Gov. Henry McMaster.") (internal quotation marks omitted).

Abandonment aside, Acree also is entitled to judgment in her favor on the merits of plaintiff's claim. As to this defendant, the Amended Complaint merely complains about how Acree responded to a grievance plaintiff filed seeking care from an optometrist. Acree responded

---

[3] See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[4] Plaintiff has filed an opposition to only defendant Storrs's Motion for Summary Judgment. [Dkt. No. 70].

2

by explaining that, although an optometrist had not visited the jail for some time due to COVID-19, one would soon "start to see patients in the order of request." [Dkt. No. 21] at 14. Although plaintiff believes that Acree "lied" in her response, thereby causing him to suffer "permanent damage to [his] vision," see id. at 14-15, the unopposed evidence that Acree submitted establishes that an optometrist had not been at the jail and that, even if this were not so, she did not have the authority to direct the optometrist to treat plaintiff. [Dkt. No. 37-1] at 2-3.

These unopposed facts do not make out a plausible claim that Acree was deliberately indifferent to plaintiff's medical needs or breached a contract or duty of care owed to plaintiff. See [Dkt. No. 21] at 14-15. Rather, the unopposed facts show that Acree attempted to help plaintiff to the full extent of her ability by advising him that an optometrist would soon return to the facility to assist inmates.

The Court additionally observes that plaintiff's requested damages for this claim are disproportionately high as compared to the harm allegedly suffered. Indeed, plaintiff has provided only a vague allegation of lasting "damage to [his] vision" without specifically describing the nature or severity of that damage or how it has progressed. [Dkt. No. 21] at 14-15. For this vague injury, plaintiff requests over $700,000 in monetary damages, of which he attributes $ 122,250 to Agee. See [Dkt. No. 21] at 17 to 19. Complaints seeking damages out of proportion to the harm they allege have been dismissed as frivolous in this jurisdiction. See, e.g., Anderson v. Pollard, No. 3:20cv489, 2020 WL 9349174, at *2 (E.D. Va. Aug. 24, 2020). For all these reasons, the Complaint against defendant Acree will be dismissed.

II. Storrs's Motions

Deputy Storrs has filed a Motion for Summary Judgment, which is supported by a video depicting the events referred to in the Complaint and Amended Complaint. [Dkt. No. 50-4]. He also has filed a Motion to Seal that video, arguing that it shows the operations and physical structures of the jail, and that jail security could be undermined if the video were made public. [Dkt. No. 55] at 1-2. The Court finds good cause for the relief requested and will grant the defendant's motion to seal. Cf. Chrisman v. Bd. Of Cnty. Comms. of Okla. Cnty, No. CIV-17-1309-D, 2020 WL 12948695, at *2 (W.D. Okla. Oct. 9, 2020) (granting motion to seal video depicting inside of jail on basis of jail security, observing that "[t]he video shows dead spots in the video surveillance—a person could watch the videos and determine where to stand to avoid coverage of the cameras").

Deputy Storrs's Motion for Summary Judgment ("Motion"), which included a Roseboro notice, is fully briefed and ready for consideration. Although plaintiff has filed a response ("Opposition")[5] identifying the points raised in Deputy Storrs's Motion with which he disagrees, he has not submitted any affidavits or documentary evidence to support his position, in spite of the Roseboro notice explaining that such evidence was required. [Dkt. No. 69]. As a result, plaintiff's Opposition may be considered only to the extent it raises legal arguments; however, as

---

[5] Plaintiff entitled his submission "Opposition to Deputy Storrs' Answer," see [Dkt. No. 69], but it is clearly an opposition to defendant's motion for summary judgment because it directly addresses the arguments raised in Deputy Storrs's Motion. Moreover, plaintiff has attached a proposed order to his submission in which he uses the phrase, "Upon consideration of Plaintiff's opposition to Defendants Storrs' Motion for Summary Judgment it is hereby . . . ." See [Dkt. No. 69-1].

4

explained below, even if the Court were to accept plaintiff's proposed version of the facts as true, Deputy Storrs would still be entitled to judgment in his favor.

A.  **_Background_**

Plaintiff alleges that Deputies Storrs and Dich, two deputy sheriffs at the Henrico County Jail, failed to protect him from an attack by inmate Hancock. [Dkt. No. 21]. Specifically, he alleges that on December 5, 2020, while on a telephone call, Hancock "began screaming on the recorded jail phone 'y'all better get me out of this pod, I fear for my safety, call down here before I beat somebody's ass.'" [Dkt. No. 21] at 9. In response, Deputy Storrs, who was outside the pod, summoned Hancock to "the pod window." Id. On his way to the window, Hancock attacked plaintiff from behind. Id. In response, Curry fought back. Within seconds, Deputy Storrs "grabbed [plaintiff] around the torso" and lifted him off of Hancock, who was on the ground. Id. at 10. As Deputy Storrs removed plaintiff from the pod, inmate Hancock followed them into the sallyport and punched plaintiff in the eye. Id. According to plaintiff, Hancock would not have been able to punch him if Deputy Storrs had not restrained Curry and if the deputies had closed the sallyport door behind Storrs and Curry. Id.

The events plaintiff describes in the day room were captured on video, and Storrs has submitted that video in support of his Motion for Summary Judgment. [Dkt. No. 51-4]. He has also submitted his own affidavit, an affidavit of Lieutenant Jessika Booker, and copies of incident reports related to the events at issue in plaintiff's Amended Complaint. See [Dkt. No. 51-1 through 51-3]. Taken together, the evidence establishes the following uncontested facts.[6]

---

[6] Because plaintiff's Complaint and Amended Complaint are not verified, they will not be considered when determining whether there is a genuine dispute of material fact. See, e.g., Huff v. Outlaw, No. 9:09-cv-520, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."). Although plaintiff has submitted a variety of grievances and request forms, see

5

On December 5, 2020, Storrs "was assigned to provide security on the second floor of Henrico County Jail West, alongside "Dep. Dich, Dep. Darby, and Dep. Akrasi." [Dkt. No. 51-1] at ¶ 6. Sgt. Rajaguru was assigned "to observe and control inmate ingress and egress into the dayrooms." Id. On that date, plaintiff and inmate Tremont Hancock were both present in Dayroom 226. Id. Curry and Hancock were not listed as "keep separate," nor had there been any complaints or reports filed to suggest they had any history of enmity or conflict. Id. at ¶ 9.

The video begins approximately one hour before the incident in question. Until the assault, which occurred at 9:39 p.m., Curry and Hancock appear to have very little interaction. Beginning at approximately 9:17 p.m. (21:17 in military time, which is what is used on the video time stamp), inmate Hancock began to use the telephone. [Dkt. No. 51-4] at 21:17:45.343. Plaintiff, who was not wearing a shirt, was standing near a table, soon to begin a card game. Id.

---

[Dkt. No. 21-1 through 21-3], these documents relate only to his request to receive medical attention, not to Deputy Storrs's involvement in plaintiff's fight with Hancock. Accordingly, these documents are not relevant to the Court's consideration of defendant's summary judgment motion and will not be addressed in this opinion.

6



*Still Image from Video [Dkt. No. 51-4] – Camera C185 – 21:17:45.343[7]*
*Hancock talking on the phone while Curry waits to play cards*

At approximately 9:28 p.m., inmate Hancock hung up the phone, walked through the pod further away from where Curry was standing to sit on a chair, where he remained until 9:39 p.m., when Deputy Storrs summoned him to the dayroom window, which was behind Curry. Id. at 21:28:57.335 through 21:39:24.000.

In response, Hancock rose from his chair and walked towards the dayroom access window. Id. at 21:39:24.000 through 21:39:29.956; [Dkt. No. 51-1] at ¶ 6. After passing Curry to get to the window, Hancock then moved towards Curry and swung his right fist toward the back of plaintiff's head. [Dkt. No. 51-1] at ¶6; [Dkt. No. 51-4] at 21:39:30.056 through 21:39:31.457. Plaintiff ducked before Hancock's fist reached him and thereby avoided the brunt of the blow. Id.

---

[7] Hancock is depicted in the bottom right corner of the frame. Plaintiff is the shirtless individual standing near the table on the right-hand side of the image.



*Still Image from Video [Dkt. No. 51-4] – Camera C185 – 21:39:31.056*
*Hancock preparing to throw the first punch at the back of Curry's head*

After avoiding the punch, plaintiff raised his fists and confronted Hancock. Id. at 21:39:34.062. The two inmates began to throw punches at each other, quickly landing on the floor where they continued to fight. Id. at 21:39:36.063 to 21:39:40.456. Meanwhile, a third inmate traveled from the top tier of the dayroom and began to strike Hancock, which allowed plaintiff to return to his feet. Id. at 21:39:38.000 to 21:29:43.997. Plaintiff then punched Hancock repeatedly as Hancock covered his head and struggled to rise from the floor until Deputy Storrs entered the dayroom and pulled plaintiff off Hancock. Id. at 21:39:44.047 to 21:39:52.689.

8



*Still Image from Video [Dkt. No. 51-4] – Camera C186 – 21:39:52.689*
*Storrs puling Curry off of Hancock, who is on the ground*

Restraining Curry in front of him, Deputy Storrs pushed him to the dayroom exit door and into the sallyport. Id. at 21:39:54.040 to 21:39:57.102. While the door to the sallyport was closing behind Deputy Storrs, Hancock entered the sallyport, id. at 21:40:00.285, and the door closed behind Hancock. Id. at 21:40:02.179. According to plaintiff, Hancock punched Curry in the eye after entering the sallyport, [Dkt. No. 21] at 10. That punch is not visible on the video; however, the affidavit of defendant Storrs establishes that "[o]nce inside the sallyport, [Storrs] did not see Hancock until he began to attempt to punch Curry. Once [Storrs] saw Hancock's arm, [he] released Curry and attempted to separate both inmates. The inmates were immediately restrained." [Dkt. No. 51-1] at ¶6. The inmates were separated from each other within seconds, and plaintiff was safely moved outside of the second sallyport door and into the hallway. Id. at 21:40:06.571. After the fight concluded, each inmate involved was charged with a disciplinary infraction and marked as "keep separate" in the jail's database. [Dkt. No. 51-3] at 2. From the

9

moment when Hancock first swung his fist at Curry to the time both Hancock and Curry were removed from the pod, less than two minutes elapsed.

### B. *Standard of Review*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); however, where, as here, "the record contains an unchallenged videotape capturing the events in question,"[8] a court need "only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) (citing Scott v. Harris, 550 U.S. 372, 380 (2007)).

---

[8] As discussed below, plaintiff appears to believe that the video tape submitted by Deputy Storrs has been somehow altered, see [Dkt. No. 68], but the video presented to the Court does not possess the characteristics he alleges. Under similar circumstances, the Fifth Circuit affirmed a district court's entry of summary judgment—which relied on video evidence—and rejected the appellant's assertions that the video had been altered. See Waddleton v. Rodriguez, 750 F. App'x 248, 254 (5th Cir. 2018) ("The video captures the use of force in its entirety and there are no sudden jumps, breaks, or other indications that the video is altered. This court will not adopt facts that are clearly contradicted by the video such as Waddleton's denial that he acted belligerently or resisted the officers.").

10

C.   *Analysis*

Plaintiff contends that Deputy Storrs failed to protect him from harm inflicted by Hancock. This claim arises under the Eighth or Fourteenth Amendment, depending on whether plaintiff was a pretrial detainee or a convicted inmate at the time of the assault, a fact not established in the record; however, because "the standards for a Fourteenth Amendment failure-to-protect claim are the same as those for a comparable claim brought by a convicted prisoner under the Eighth Amendment,"[9] the Court need not conduct distinct analyses under each legal theory.[10]

To prevail on a failure to protect claim, a plaintiff must show that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both [have been] aware of the facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] drawn the inference," Farmer v. Brennan, 511 U.S. 825, 837-38 (1994), and he must have disregarded the risk. In other words, plaintiff must prove two elements: one based on knowledge and a second based on omission. Because there were two separate incidents of violence in this case—the initial fight between plaintiff and Hancock and Hancock's assault on plaintiff in the sallyport—the Court will address these elements as to each incident.

---

[9] See McFadden v. Butler, No. TDC-16-0437, 2018 WL 1394021, at *4 (D. Md. Mar. 19, 2018) (citing Goodman v. Kimbrough, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013); Kamara v. Prince George's County Dep't of Corr., No. ELH-15-3952, 2017 WL 735549, at *12 (D. Md. Feb. 24, 2017) (collecting cases)).

[10] In Kingsley v. Hendrickson, 576 U.S. 389 (2015), the Supreme Court held that a pretrial detainee bringing an excessive force claim under the Fourteenth Amendment is no longer required to satisfy the subjective component present in an Eighth Amendment excessive force claim; however, neither the Supreme Court nor the Fourth Circuit has extended Kingsley beyond the excessive force context into a pretrial detainee's deliberate indifference or failure to protect claims. See Mays v. Sprinkle, 992 F.3d 295, 300-02 (4th Cir. 2021).

1.  Initial Fight

The record contains no evidence showing that either Storrs or Dich knew plaintiff was at risk of being attacked by Hancock or, for that matter, by any other inmate. In his Opposition to the Motion for Summary Judgment, plaintiff claims that Hancock was "a witness used against [him]" in a 2018 criminal trial. [Dkt. No. 69] at 1. He also highlights an incident report submitted by Deputy Storrs which states that, before the fight, Hancock's family had called Henrico County Jail to inform officials that "inmates in the dayroom [were] preparing to jump [Hancock]." See [Dkt. No. 51-3] at 2. According to plaintiff, Storrs summoned Hancock from the dayroom window because of that phone call and had been instructed to escort Hancock to a sergeant's office. [Dkt. No. 69] at 5.

Plaintiff's assertions are uncorroborated but, even accepting them as true, they do not support a reasonable inference that Storrs had any reason to believe that Hancock posed a danger to plaintiff. If Hancock had previously testified against plaintiff, there is no evidence in the record to suggest that jail officials knew this, nor could those officials be expected to know such specific details of every inmate's criminal trial, particularly for years-old trials like plaintiff's. Second, although plaintiff contends that he and Hancock never should have been housed together, the record establishes that no "keep separate" order existed to warn officers of potential conflict. Finally, to the extent Hancock's family's phone message could be seen as warning jail officials of danger, it could only reasonably be seen as a warning that *Hancock*, not plaintiff, was in danger—because plaintiff describes the phone message as reporting that Hancock feared for his safety,[11] not that Hancock was planning to attack another individual. Consequently, there is

---

[11] The incident report submitted as an exhibit to defendant's memorandum confirms this description. See [Dkt. No. 51-3] at 2.

12

no basis in this record for a finding that either Storrs or Dich knew Hancock posed a threat to plaintiff.

The record also establishes that Storrs did not "disregard" any danger plaintiff faced. Not only was Storrs already in the process of removing Hancock from the dayroom, the video evidence makes clear that, as soon as Hancock swung his fist at plaintiff, Storrs began to move into the dayroom. As the video shows, less than twenty-one seconds passed between Hancock's first attempted punch and Storrs's restraint of plaintiff, and for that entire period, Storrs was consistently moving in the direction of the incident.

2. <u>Assault in Sallyport</u>

Consideration of the failure to protect claim with respect to the second assault in the sallyport must recognize that this assault occurred within seconds. As the record shows, from the time Storrs initially restrained plaintiff, through the time of the second assault, and to the time the inmates were definitively separated, only ten seconds passed. During most of that time, Storrs had plaintiff restrained in front of him and was taking him out of the dayroom with their backs to Hancock. Given his position, Storrs could not have seen Hancock approaching from behind and therefore cannot be said to have "known" that Hancock continued to pose a threat to plaintiff. And once Storrs became aware of Hancock's presence, he acted immediately and decisively, managing to separate the two inmates very quickly. [Dkt. No. 51-1] at ¶ 6. This is conclusive evidence that Storrs did not "disregard" the threat plaintiff faced from Hancock during the second assault.

### III. "Motion for Spoilage"

Plaintiff has filed a "Motion for Spoilage of Evidence" in which he asserts that the video "plays in a fast forwarded speed which makes it hard to see exactly what's going on" and that the

video "was edited and timestamp was disabled." [Dkt. No. 68]. Based on these alleged defects or alterations, plaintiff requests that the video "be deemed inadmissible and it be ordered that the original video be produced and forewarded [sic] to plaintiff as well as submitted on record." Id.

Plaintiff's arguments are without merit. The Court has reviewed the video, which contains timestamps and—when aided by video playback software—can be viewed in a frame-by-frame manner such that the events depicted are easy to see and understand. Moreover, although plaintiff claims the video he was shown was sped up, he does not dispute that the video accurately depicts the events underlying his Complaint. In fact, in his Opposition to the Motion for Summary Judgment, plaintiff refers to specific events in the video to support his position. See, e.g., [Dkt. No. 69] at 3 ("[A]nother inmate, Hancock's cellmate threw him some sneakers to fight in. This can be seen on video.").

In addition, in an affidavit, Lieutenant Jessika Booker has averred that the video evidence referenced as Exhibit 4 to defendant's memorandum is a "true, accurate, and authentic copy of the security footage related to" the events underlying plaintiff's lawsuit, that the record was "kept in the course of regularly conducted activity," and that "it is Henrico County Sheriff's Office's regular practice to generate and maintain these recordings." See [Dkt. No. 51-2] at ¶ 5. Defendants were ordered to arrange for the petitioner to watch the video and they have represented to the Court that they complied with that order. [Dkt. No. 67]. Because there is no genuine question that the video accurately depicts the events in question, and Deputy Storrs has produced evidence affirming that plaintiff has been shown the video, this spoliation motion will be denied. Cf. Riddick v. Franklin, No. 7:20cv81, 2022 WL 17547266, at *2 (W.D. Va. Dec. 9, 2022) (upholding magistrate judge's denial of spoliation motion which was based on "naked

representations about altered video clips" and stating that proponents of video evidence face a "low bar to admissibility").

## IV. Deputy Dich

Although defendant Deputy Dich filed an Answer, rather than a dispositive motion, the Amended Complaint will be dismissed against him. Plaintiff's allegations regarding Deputy Dich focus on the assault in the sallyport, not the initial fight. The Amended Complaint alleges that Deputy Dich "stood next to Tremont Hancock and watched him get back up from the floor and storm right past Deputy Dich who stood by smiling and made no attempt to stop inmate Hancock from further assaulting [Curry]" and that Deputy Dich made disparaging comments about Curry to other inmates about 30 minutes after the altercation. [Dkt. No. 21] at 11 to 12. Deputy Dich denies these allegations in his Answer, and the video of the incident contradicts plaintiff's allegations by showing that during the time that Hancock got off the floor and followed Storrs and Curry into the sallyport, Deputy Storrs was the only deputy visible inside of the day room. [Dkt. No. 51-4] at 21:39:54.388 to 21:40:00.633. Given this clear evidence, plaintiff's unsupported allegations are insufficient to state a failure to protect claim against Deputy Dich. Accordingly, the Amended Complaint will be dismissed with prejudice as to Deputy Dich.

## V. Conclusion

For the reasons stated above, in an Order that will accompany this Opinion, Nurse Acree's Motion to Dismiss will be granted, Deputy Storrs's Motion for Summary Judgment and Motion to Seal will be granted, plaintiff's "Motion for Spoilage" will be denied, and the Amended Complaint will be dismissed as to Deputy Dich.

Entered this 14th day of June 2023.

Alexandria, Virginia.

/s/
Leonie M. Brinkema
United States District Judge